1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                              AT SEATTLE

10    KIRK L RISHOR,                          CASE NO. C11-1492 MJP

11                    Petitioner,             ORDER ON MOTION FOR
                                              RECONSIDERATION
12           v.

13    BOB FERGUSON,

14                    Respondent.

15

16          THIS MATTER comes before the Court on Petitioner Kirk Rishor's Motion for

17   Reconsideration (Dkt. No. 43) of the Court's Order Denying Petition for Writ of Habeas Corpus

18   and Dismissing Action (Dkt. No. 40). Having reviewed Petitioner's Motion, Respondent's

19   Response (Dkt. No. 49), Petitioner's pro se Reply (Dkt. No. 50), Petitioner's Reply via appointed

20   counsel (Dkt. No. 55), Respondent's Response to the Court's order for additional briefing (Dkt.

21   No 54), Respondent's Surreply and Motion for Oral Argument (Dkt. No. 56), Petioner's Motion

22   to Strike (Dkt. No. 57), Respondent's Response to Motion to Strike (Dkt. No. 58), Respondent's

23   Supplemental Brief prior to oral argument (Dkt. No. 60), Petitioner's Supplemental Submission

24   (Dkt. No. 61), and Exhibit 1 to the parties' oral argument (see Dkt. No. 63), and having heard

1   oral argument on October 22, 2014, the Court hereby VACATES the previous order and

2   judgment, DECLINES to adopt the Report and Recommendation, and GRANTS the petition for

3   habeas corpus on both waiver of counsel and double jeopardy grounds.

**Background**

5       Mr. Rishor is an experienced pro se litigant who represented himself in his first trial on

6   four charges—first degree assault, two counts of second degree assault, and first degree unlawful

7   possession of a firearm—in Whatcom County in 2004. (See Dkt. No. 29, Ex. 23 at 6.) Prior to

8   that trial, the trial court engaged in what the Washington appellate court described as an

9   "extensive colloquy" with Petitioner about his wish to represent himself. (See Dkt. No. 29, Ex.

10   19 at 3-4; Ex. 22.) The jury acquitted Petitioner on the formal second degree assault charges but

11   returned a guilty verdict on the unlawful possession charge and also on second degree assault (as

12   a lesser included offense of the first degree assault charge). (See Dkt. No. 29, Ex. 23 at 6.) The

13   jury was silent as to the first degree assault charge, but showed no signs of deadlock. (See Dkt.

14   No. 49 at 13.)  On appeal, the Washington Court of Appeals reversed the second degree assault

15   conviction and remanded for a new trial on that charge. (Dkt. No. 29, Ex. 23 at 2.) The three

16   claims Petitioner asks the Court to reconsider (validity of waiver of right to counsel, double

17   jeopardy, and certificate of appealability (see Dkt. No. 43 at 1–3)) relate to the proceedings on

18   these matters after remand.

19       I.      Facts Related to Waiver of the Right to Counsel

20       On remand, the trial court did not explicitly confirm Petitioner's previous waiver of

21   counsel. While a trial judge stated during an early appearance that he "had [Rishor] here to

22   reiterate his request to proceed in a pro se basis," he did not engage in a formal colloquy with

23   Petitioner. (Dkt. No. 29, Ex. 24 at 5.) Petitioner responded to the question whether he wished to

24

1    proceed on a pro se basis by asking for standby counsel rather than acknowledging the risks of

2    representing himself. (Id.)

3          In a later appearance before a different judge, he was asked whether he had an attorney,

4    and he responded, "No, I don't. I'm pro se, Your Honor." (Dkt. No. 29, Ex. 26 at 3.) He

5    reiterated his need for standby counsel in order to have his motions noted: "I can't get stuff noted

6    up for docket unless I have Mr. Fryer doing it because they won't do it from jail." (Id. at 7.) In a

7    separate transcript dated the same day, Petitioner told the judge that his standby counsel did not

8    need to be present for his arraignment. When the judge asked the prosecutor why Mr. Fryer was

9    not present, Petitioner answered, "Because he had some other stuff to do and I could handle the

10   arraignment by myself. I don't really need him here. That's why." (Dkt. No. 29, Ex. 16, Appx. G

11   at 3.) The prosecutor stated, "I would think Mr. Fryer would or should have been here," and

12   Petitioner responded, "Your Honor, that's the problem I'm having. I can show up for court and

13   take care of most of the stuff. Mr. Fryer didn't need to be here this morning. I told him." (Id.)

14   Petitioner was not in fact arraigned on that occasion because the judge could not find the

15   information in his case. The judge guessed (incorrectly) that he was facing only a second-degree

16   assault charge: "Now, the last thing in this file that I'm finding is a Judgment and Sentence

17   where you were convicted of assault in the second degree and unlawful possession of a firearm

18   in the first degree back in May of '04. I'm assuming that that remains the charge, that's what's

19   been remanded. For some reason there doesn't appear to be a copy of the Information in this file

20   [. . . .] Assuming that there hasn't been an amended charge filed, that's what you're looking at."

21   (Id. at 5.)

22         On appeal, the Court of Appeals held that Petitioner's representations as contained in

23   these transcripts constituted a valid waiver of the right to counsel in light of the court's formal

24

1  colloquy with Petitioner two and a half years earlier. (See Dkt. No. 29, Ex. 19 at 3–4.) According

2  to the Court of Appeals, "Rishor made no showing after remand that he no longer wished to

3  represent himself. Rather, he requested only standby counsel and, [sic] further stated that he did

4  not need standby counsel to be present at arraignment and that he was able to 'show up for court

5  and take care of most of the stuff.'" (Id. at 4.) The Court of Appeals also held that under the

6  standard of review used for personal restraint petitions in Washington, Petitioner could not show

7  actual prejudice because his standby counsel was involved in plea negotiations. (Id.)  The

8  Washington Supreme Court then held in a ruling denying discretionary review that to the extent

9  that this failure to secure a second waiver of counsel was constitutionally deficient, the

10  deficiency was not prejudicial. (Dkt. No. 29, Ex. 21 at 2.)

11        II.        Facts Related to Double Jeopardy

12        On remand from the Court of Appeals, Petitioner was initially charged with first degree

13  assault again—even though his first jury had impliedly rejected that charge in convicting him of

14  the lesser included offense. (Dkt. No. 29, Ex. 5 at 83.) He was never formally arraigned on this

15  charge, though his standby counsel purported to waive his arraignment. (Dkt No. 29, Ex. 28.) As

16  reflected in the transcripts, Petitioner was given varying information about the charge he was

17  facing at different times during the pretrial and post-plea phases. (See, e.g. Dkt. No. 29, Ex. 16,

18  Appx. G at 5 (during the pretrial phase a judge told Petitioner the judge assumed Petitioner was

19  facing a second-degree charge); Dkt. No. 29, Ex. 24 at 10 (during the pretrial phase a prosecutor

20  told the judge, "[T]echnically he is back here for a first appearance on the assault in the second

21  degree"); Dkt. No. 29, Ex. 17, Appx. C at 5 (after Petitioner's plea a prosecutor told the

22  sentencing judge, "Of course at this point in time the State could only proceed on assault in the

23

24

1  second degree"); Dkt. No. 29, Ex. 30 at 3 (after Petitioner's plea Petitioner stated that he had

2  been charged with first degree assault on remand).)

3       The record reflects that the Second Amended Information changing Petitioner's charge to

4  second degree assault was filed on January 8, 2007, the same date Petitioner entered a plea of

5  guilty to second degree assault. (Dkt. No. 61, Appx. A at 20; id., Appx. D. at 2; Dkt. No. 63.)

6  According to an affidavit by Petititioner's standby counsel, which was filed in the state court

7  proceedings, he had advised Petitioner during the pretrial phase of the sentencing consequences

8  of a conviction of assault in the first degree and that "While I cannot speak to the defendant's

9  thought process as to accepting or rejecting the plaintiff's offer to plead guilty to assault in the

10  second degree. [sic] Presumptively, the information I provided him as to the consequences of

11  being convicted of convicted of assault in the first degree in contrast to the consequences of

12  pleading guilty to assault in the second degree factored into his decision to plead guilty to the

13  amended charge." (Dkt. No. 29, Ex. 16, Appx. K at 2.) The record thus suggests Petitioner was

14  not informed that the first degree assault charge was improper and that he was offered an

15  amended information in exchange for a plea of guilty to second degree assault.

16       III.    Procedural History and Exhaustion

17       The prior proceedings in the state courts are numerous, and the Report and

18  Recommendation summarizes most aspects of the history well. (Dkt. No. 35 at 2–7.) The Court

19  notes the following correction: Petitioner's guilty plea was on January 8, 2007, not 2006. (See

20  Dkt. No. 61, Appx. C at 2; Dkt. No. 35 at 2.)

21       Respondent has conceded that Petitioner exhausted his state remedies as least as to the

22  three claims directly addressed by the Report and Recommendation, including waiver of the right

23  to counsel. (Dkt. No. 27 at 10.) Counsel for Petitioner argues the double jeopardy claim was

24

1   fairly presented to the state courts, while Respondent argues it was not exhausted. (Dkt. No. 49 at

2   12–14.) The procedural history relevant to exhaustion and second or successive petitions is

3   described in the corresponding sections below.

4                                            **Discussion**

5        I.      Standards of Review

6        A.  Motion for Reconsideration

7            Pursuant to Local Rule 7(h)(1), motions for reconsideration are disfavored, and will

8   ordinarily be denied unless there is a showing of (a) manifest error in the ruling, or (b) facts or

9   legal authority which could not have been brought to the attention of the court earlier, through

10  reasonable diligence.  The term "manifest error" is "an error that is plain and indisputable, and

11  that amounts to a complete disregard of the controlling law or the credible evidence in the

12  record."  Black's Law Dictionary 622 (9th ed. 2009).

13       B.  Second or Successive Bar

14           Respondent argues Petitioner's Motion for Reconsideration is subject to AEDPA's

15  second or successive claims bar. (Dkt. No. 60 at 2.) That bar provides:

16       (b)(1) A claim presented in a second or successive habeas corpus application under
         section 2254 that was presented in a prior application shall be dismissed.

17
18       (2) A claim presented in a second or successive habeas corpus application under section
         2254 that was not presented in a prior application shall be dismissed unless--
             (A)      the applicant shows that the claim relies on a new rule of constitutional
19                    law, made retroactive to cases on collateral review by the Supreme Court,
                      that was previously unavailable; or
20           (B)      (i) the factual predicate for the claim could not have been discovered
                      previously through the exercise of due diligence; and
21                    (ii) the facts underlying the claim, if proven and viewed in light of the
                      evidence as a whole, would be sufficient to establish by clear and
22                    convincing evidence that, but for constitutional error, no reasonable
                      factfinder would have found the applicant guilty of the underlying offense.

23  28 U.S.C. § 2244.

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

C. AEDPA Standard

Finally, a federal court may not grant an application for habeas corpus

with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"[C]learly established federal law" for the purpose of § 2254(d) means "holdings of the Supreme Court at the time of the state court decision." Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citation omitted). While it is improper to derive "clearly established federal law" by canvassing circuit court opinions in the absence of a Supreme Court opinion on point, this Court may look to 9th Circuit case law to ascertain whether the 9th Circuit has held that the particular point at issue is clearly established by Supreme Court precedent. See Marshall v. Rodgers, ——— U.S. ———, 133 S. Ct. 1446, 1450–1451 (2013) (per curiam). In applying this standard of review, the Court "look[s] to the last reasoned decision in the state court system." Collins v. Runnels, 603 F.3d 1127, 1130 (9th Cir. 2010) (quotation marks omitted). Once the "contrary to" prong is met for a particular point of law, the Court analyzes the constitutional question without the deference that AEDPA otherwise requires. See Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (citing Panetti v. Quarterman, 551 U.S. 930, 953 (2007)).

II.     Postjudgment Motions and Second or Successive Bar

Respondent argues Petitioner's Motion for Reconsideration is akin to a Federal Rule of Civil Procedure 60(b) motion for relief from a final judgment; according to Respondent, such a motion cannot evade the new claims litigation bar of AEDPA and is considered a second or successive habeas application under Gonzalez v. Crosby, 545 U.S. 524, 531 (2005) and Calderon

1   v. Thompson, 523 U.S. 538, 553 (1998). (Dkt. No. 60 at 2.) However, neither case cited by

2   Respondent concerns a motion for reconsideration that was timely filed in the district court. See

3   Gonzalez, 545 U.S. at 527 (Rule 60(b) motion filed nine months after a change in applicable law

4   and more than a year since the last order at the Court of Appeals); Calderon, 523 U.S. at 555

5   (recall of mandate by Court of Appeals).

6       A motion for reconsideration filed within 28 days is considered a Rule 59(e) motion

7   rather than a Rule 60(b) motion. See Am. Ironworks & Erectors, Inc. v. North Am. Constr.

8   Corp., 248 F.3d 892, 898–99 (9th Cir. 2001). Rule 60(b)(6) is appropriate only "where

9   'extraordinary circumstances prevented [him] from taking timely action to prevent or correct an

10  erroneous judgment.'" Hamilton v. Newland, 374 F.3d 822, 825 (9th Cir. 2004), quoting

11  Greenawalt v. Stewart, 105 F.3d 1268, 1273 (9th Cir. 1993) (emphasis added). Here, in contrast,

12  Petitioner took prompt action to correct the judgment: the motion was filed seventeen days after

13  the Court's order and entry of judgment and is therefore a Rule 59(e) motion. (See Dkt. Nos. 43,

14  42, 41.)

15      There is a circuit split on the question whether the Gonzalez analysis applies to Rule

16  59(e) motions. The Fifth, Eighth, Tenth, and Fourth Circuits have held or implied that it does.

17  See Williams v. Thaler, 602 F.3d 291, 303–04 (5th Cir. 2010); Ward v. Norris, 577 F.3d 925,

18  931–35 (8th Cir. 2009) (although it appears from the panel's discussion of the facts that the

19  purported Rule 59(e) motion was filed more than 28 days after the entry of judgment and after

20  the denial of a Rule 60(b) motion); United States v. Pedraza, 466 F.3d 932, 933 (10th Cir. 2006)

21  (although there the Rule 59(e) motion was a motion for reconsideration of the district court's

22  decision on a Rule 60(b) motion); United States v. Martin, 132 Fed.Appx. 450, 451 (4th Cir.

23  2005) (pre-Gonzalez decision in which timeliness of Rule 59(e) motion is not discussed). The

24

Sixth and Third Circuits have concluded that <u>Gonzalez</u> does not apply to timely filed Rule 59(e)

motions. <u>See</u> <u>Howard v. United States</u>, 533 F.3d 472, 475 (6th Cir. 2008); <u>Blystone v. Horn</u>, 664

F.3d 397, 414–45 (3d Cir. 2011). The Ninth Circuit has not yet decided the question.

Because a timely filed motion for reconsideration tolls the time for appeal, <u>see</u> Fed. R.

App. P. 4(a)(4)(A), and thus effectively suspends the finality of the judgment for that period, the

Court agrees with the Sixth and Third Circuits' conclusions that such a motion does not

constitute a second or successive application for habeas corpus. <u>See</u> <u>Blystone</u>, 446, F.3d at 414

([A] timely filed Rule 59(e) motion <u>suspends</u> the finality of the judgment by tolling the time for

appeal. Accordingly, we cannot logically subject a Rule 59(e) motion to the statutory limitations

imposed upon second or successive collateral attacks on criminal judgments because, unlike a

Rule 60(b) motion, it is neither a collateral attack on the initial habeas judgment, nor a new

collateral attack on the underlying criminal judgment—rather it is part and parcel of the

petitioner's 'one full opportunity to seek collateral review.'") (emphasis in original) (citations

omitted).

In addition, at least with respect to the double jeopardy claim, there can be no argument

that Petitioner is bringing a "claim presented in a second or successive habeas corpus

application" that was also "presented in a prior application." <u>See</u> 28 U.S.C. § 2244(b). Under

<u>Gonzalez</u>, the double jeopardy claim neither raises a "new ground for relief" (because it was

raised in his initial habeas petition, albeit inartfully) nor "attacks the federal court's previous

resolution of a claim on the merits" (because the Court failed to recognize the claim and address

its merits). <u>Cf.</u> <u>Gonzalez</u>, 545 U.S. at 532 (distinguishing Rule 60(b) motions that "advance one

or more 'claims'" from those that address "some defect in the integrity of the federal habeas

proceedings"). (<u>See</u> Petition (form habeas petition), Dkt. No. 4 at 6 ("no notice of charges"), 8

1  ("failure to arraign"); Supplemental Brief (supplemental brief filed seven days after the habeas

2  petition), Dkt. No. 5 (arguing under Grounds 1 and 2 that "The state had no legal authority to re-

3  file first degree assault charges against the petitioner. State v. ahluwalia, 143 Wn. 2. 527, 540–

4  41, 22 p. 3d. 1254 (2001) as demonstrated by the discussion in ahluwalia and [sic] arraignment is

5  required afther [sic] a reversal, especially where an amended information is filled [sic] and there

6  is a basis to be confused about the charges."); Report and Recommendation, Dkt. No. 35 at 9 n.3

7  (noting but not addressing the argument that "it was improper for the state to charge him with

8  first degree assault on remand because he was found not guilty on that charge at his original

9  trial").)

10          III.     Waiver of the Right to Counsel

11          Petitioner first seeks reconsideration on waiver of the right to counsel, arguing the state

12  courts applied the wrong standard of review to the trial court's failure, on remand, to secure a

13  waiver of the right to counsel on the new charges he was facing in the wake of acquittals and an

14  appeal. (Dkt. No. 43 at 1–2; Dkt. No. 55 at 5–6.) In this case, the "last reasoned opinion" in the

15  state courts is the Washington Supreme Court's opinion denying discretionary review. See

16  Barker v. Fleming, 423 F.3d 1085, 1091–92 (9th Cir. 2005) (holding that a seven-page order

17  from the Washington Supreme Court denying review of a personal restraint petition and

18  examining the substance of the claim at issue was the last reasoned decision). Petitioner is

19  correct that the last reasoned opinion of the Washington courts clearly required Petitioner to

20  demonstrate prejudice on this question. (Dkt. No. 29, Ex. 21 at 2.)  The more detailed Court of

21  Appeals opinion contained a similar analysis. (See Dkt. No. 29, Ex. 19 at 4.) The Report and

22  Recommendation previously adopted by this Court also relied on a prejudice finding: "In fact,

23  the record suggests that petitioner desired to represent himself on remand and that he ably did so

24  with the assistance of standby counsel." (Dkt. No. 35 at 13.) Furthermore, in adopting that

1   Report and Recommendation, this Court's Order (Dkt. No. 40 at 2) overlooked Petitioner's

2   citations to a relevant Supreme Court case on per se prejudice in his Objections (Dkt. No. 38 at

3   2).

4        The Court notes that the record suggests that Petitioner may well have been prejudiced by

5   the supposed assistance of his standby counsel, who purported to waive arraignment even though

6   Petitioner was not aware of the charges against him and informed Petitioner during plea

7   negotiations that he was facing a higher sentence based on a first-degree assault when double

8   jeopardy should have prevented that charge from being filed. (See Dkt No. 29, Ex. 28; id., Ex.

9   17, Appx. K.)

10       However, it would be imprecise to say that the Washington courts' failure to recognize

11  this prejudice is contrary to federal law—because federal law does not require a showing of

12  prejudice on Sixth Amendment claims in the first place. As Petitioner pointed out in his Motion

13  for Reconsideration, the Ninth Circuit has stated unequivocally that the application of a harmless

14  error standard to a trial court's failure to secure a Faretta waiver does not comport with the Sixth

15  Amendment. United States v. Erskine, 355 F.3d 1161, 1167 (9th Cir. 2004) ("[T]he failure to

16  meet the requirements for a valid Faretta waiver constitutes per se prejudicial error, and the

17  harmless error standard is inapplicable."); see also United States v. Mohawk, 20 F.3d 1480, 1483

18  (9th Cir. 1994). Thus, Petitioner's argument merited reconsideration by this Court on the grounds

19  that the Report and Recommendation and the Order adopting the Report and Recommendation

20  included a "manifest error" or "mistake." LCR 7(h)(1); FRCP 60(b).

21       It is not clear, however, that the narrow legal principle of per se prejudice has been

22  precisely enunciated by the United States Supreme Court—a prerequisite to relief under

23  AEDPA. The Supreme Court has held that a denial of the right to self-representation under the

24

1  Sixth Amendment is per se prejudicial error. McKaskle v. Wiggins, 465 U.S. 168, 177, n.8

2  (1984). In a mirror-image case somewhat closer to the factual scenario presented here, the

3  Supreme Court also held that the denial of the right to be assisted by the counsel of one's choice

4  is per se prejudicial error. United States v. Gonzalez-Lopez, 548 U.S. 140, 148 (2006) ("Where

5  the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary

6  to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation.").

7  Together, these cases imply that the Supreme Court would, if faced with this question, hold that

8  the Washington courts were wrong to require Petitioner to demonstrate prejudice in the Sixth

9  Amendment claim he makes here. However, according to the Supreme Court, a habeas claim

10  does not merit relief under AEDPA where the state court has unreasonably failed to extend the

11  legal principles in Supreme Court precedent. White v. Woodall, 134 S. Ct. 1697, 1705–06

12  (2014). Because the precise conclusion that failure to secure a valid Faretta waiver is per se

13  prejudicial appears in Ninth Circuit but not Supreme Court precedent, this Court cannot grant

14  relief on that claim.

15  　　　Petitioner is on more solid ground when he argues that Washington courts

16  unconstitutionally shifted the burden onto Petitioner to demonstrate a knowing and voluntary

17  waiver of counsel. (Dkt. No. 55 at 5.) According to the Supreme Court, "It is the State's burden

18  to show that a [Sixth Amendment] waiver is knowing and voluntary." Michigan v. Harvey, 494

19  U.S. 344, 354 (1990). Furthermore, "the right to counsel does not depend on a request from a

20  defendant . . . and courts indulge in every reasonable presumption against waiver. This strict

21  standard applies equally to an alleged waiver of the right to counsel whether at trial or at a

22  critical stage of pretrial proceedings." Brewer v. Williams, 430 U.S. 387, 404 (1977) (citations

23  omitted). In this case, both the Court of Appeals opinion and the Supreme Court shifted the

24

1   burden to Petitioner to demonstrate that he knowingly and voluntarily waived the right to

2   counsel. (See Dkt. No. 29, Ex. 19 at 4 ("Rishor made no showing after remand that he no longer

3   wished to represent himself."); Ex. 21 at 2 ("[T]he record indicates that Mr. Rishor was more

4   than ready to proceed pro se with the active assistance of standby counsel.").) These conclusions

5   were contrary to clearly established federal law as established by the Supreme Court because

6   they put the burden on Petitioner to demonstrate lack of waiver and failed to apply a presumption

7   against waiver.

8          Once the "contrary to" prong is met for a particular point of law, the Court analyzes the

9   constitutional question without the deference that AEDPA otherwise requires. See Frantz v.

10  Hazey, 533 F.3d at 735. If the state prosecutes Petitioner on the second degree assault charge, the

11  Washington courts must ensure that Petitioner either is provided with counsel or "knowingly and

12  intelligently" waives the right to counsel—a standard which requires the defendant to be "aware

13  of the nature of the charges against him, the possible penalties, and the dangers and

14  disadvantages of self-representation" on those charges. See Mohawk, 20 F.3d. at 1484. The

15  question whether Petitioner is skilled at self-representation is, under Ninth Circuit precedents,

16  "irrelevant." Id.

17         IV.    Double Jeopardy

18         Petitioner also seeks the Court's reconsideration on double jeopardy: "that Petitioner was

19  found NOT GUILTY OF FIRST DEGREE ASSAULT at Jury Trial with an implied

20  acquittal/Washington States silent doctrine." (Dtk. No. 43 at 2.) Petitioner's double jeopardy

21  claims merit reconsideration because the Report and Recommendation and the Order adopting it

22  acknowledged the existence of a recognizable constitutional argument without addressing it or

23  by addressing it erroneously. (See Dkt. No. 35 at 9 n.3 ("Petitioner maintains that it was

24

1    improper for the state to charge him with first-degree assault on remand because he was found

2    not guilty of that charge at his original trial."); Dkt. No. 40 at 3 ("Although Petitioner was not

3    originally convicted on first degree assault, Petitioner was initially charged with first degree

4    assault; there is no indication there was any prosecutorial vindictiveness by bringing that same

5    charge on remand.").) Contrary to Respondent's characterization of the Court's docket,

6    Petitioner first raised double jeopardy arguments in the earliest stages of this case: the

7    Supplemental Brief filed in conjunction with his Petition ("The state had no legal authority to re-

8    file first degree assault charges against the petitioner." (Dkt. No. 5 at 3); "The acting chief judge

9    dismissed petitioner's's [sic] claim that the court re-charged him with first degree assault

10   knowing that second degree was all he could be charged with by stating he did not raise the

11   argument in the motions transferred for consideration. Petitioner has supplied theses[sic] motions

12   and his reply brief in appendix a of this motion [. . . . ] Craig chambers states second degree

13   assault was all petitioner could be charged with after remand. Two years after he re-filed the first

14   degree assault charges against petitioner." (Dkt. No. 5 at 4) (citations omitted)) and the

15   Supplemental Brief filed after Petitioner's 60(b) motion following the denial of his petition on

16   custody grounds ("Then the Prosecution Re-Filed FIRST DEGREE ASSAULT CHARGES

17   against the Petitioner on November 6th 2006. Petitioner was found NOT GUILTY BY JURY on

18   these charges at his original trial, the Peititoner was never given notice, or arraigned on this new

19   filing either, and this is what they used to COERCE the guilty plea [ . . . .] [The Washington

20   Supreme Court] LEAVE[S] OUT THE FACT that I was unconstitutionally recharged with First

21   Degree Assault that I was previously found NOT GUILTY BY JURY." (Dkt. No. 23 at 4)).

22          As Respondent acknowledged in its Response to the Court's order requesting additional

23   briefing, Petitioner was in fact charged with first-degree assault on remand even though he had

24

1    been impliedly acquitted of that charge at his first trial. (See Dkt. No. 49 at 13.) Respondent's

2    description of this problem in its Response ("subsequent prosecution on the charge the jury

3    implicitly acquits is a double jeopardy violation," Dkt. No. 49 at 13) led the Court to characterize

4    Respondent's position as an "admission that Petitioner was prosecuted in violation of the Double

5    Jeopardy Clause." (Dkt. No. 53 at 1.) Respondent strenuously objected to this characterization in

6    an unsolicited letter to the Court, noting that Respondent ultimately pled guilty to second degree

7    assault, which in Respondent's view cures and insulates from review the initial charging

8    problem. (Dkt. No. 54 at 1.) The Court was never under any misapprehension about

9    Respondent's position on this point; being charged and therefore "prosecuted" in violation of the

10   Double Jeopardy Clause does not necessarily mean Petitioner is entitled to relief under AEDPA.

11        A.  Exhaustion

12        The first hurdle Petitioner must contend with is exhaustion. Respondent argues

13   Petitioner's double jeopardy claim is not exhausted and is procedurally defaulted. (Dkt. No. 13–

14   14.) Petitioner identifies several places in the state court proceedings, including Petitioner's pro

15   se Motion for Discretionary Review to the Washington State Supreme Court, where Petitioner

16   brought claims that raised double jeopardy issues while omitting the "talismanic phrase 'double

17   jeopardy.'" (Dkt. No. 55 at 18–19.)

18        The Court is mindful that the "exhaustion doctrine [ . . . ] is founded on concerns broader

19   than those of the parties; in particular, the doctrine fosters respectful, harmonious relations

20   between the state and federal judiciaries." Wood v. Milyard, 132 S. Ct. 1826, 1833 (2012)

21   (citation omitted). In order to exhaust a claim, a petitioner must "fairly present" his "federal legal

22   theories to the state courts, so that those courts are alerted to the fact that the prisoner[ ] [is]

23   asserting claims under the United States Constitution and thus given the opportunity to correct

24

1    alleged violations of [the] prisoner['s] federal rights." <u>Arrendondo v. Neven</u>, 763 F.3d 1122,

2    1138 (9th Cir. 2014) (citing <u>Duncan v. Henry</u>, 513 U.S. 364, 365–66 (1995)) (internal quotation

3    marks omitted). "To fairly present a federal claim, a state prisoner must present to the state

4    courts both the operative facts and the federal legal theories that animate the claim." <u>Id.</u> (citations

5    omitted). However, "the complete exhaustion rule is not to trap the unwary pro se prisoner."

6    <u>Slack v. McDaniel</u>, 529 U.S. 473, 487 (2000) (internal quotation marks omitted). "[C]itation to

7    either a federal or state case involving the legal standard for a federal constitutional violation is

8    sufficient to establish exhaustion." <u>Castillo v. McFadden</u>, 399 F.3d 993, 999 (9th Cir. 2005).

9            Here, Petitioner first presented the factual and legal basis for his double jeopardy claim in

10   a pro se "statement of additional grounds" filed as a supplement to his counseled opening brief to

11   the Court of Appeals in an appeal of his post-judgment Superior Court motion to withdraw his

12   guilty plea and petition for habeas corpus. (Dkt. No. 29, Ex. 10.) In this submission, Petitioner

13   briefed two assignments of error: "1) Did the state error [sic] when it refiled 1° assault charges?"

14   and "2) Were the states [sic] actions governmental misconduct?" (<u>Id.</u> at 4.) He argued,

15           Rishor's cases was reversed and remanded on August 14, 2006 on the lesser included
             charge of count 1, 2° assault. After Rishor returned to the superior court, the state filed 1°
16           assault charges against Rishor based on the original information. This was an error. When
             the jury came back from deliberation they had been silent on the 1° assault charge. [sic]
17           thus invoking the silent doctrine[.]

18   (<u>Id.</u>) He cited two Washington state cases, <u>State v. Schoel</u>, 54 Wn.2d 388 (1959), and <u>State v.

19   Linton</u>, 156 Wn.2d 777 (2006), which were precisely on point: in both, the implied acquittal

20   doctrine was at issue and the holding rested solely (in <u>Schoel</u>) and equally (in <u>Linton</u>) on the

21   double jeopardy guarantee of the Fifth Amendment. He concluded, "The reversal and remand

22   was on 2° assault, and that is all Rishor could have been retried on." (Dkt. No. 29, Ex. 10 at 4.)

23

24

1        These supplemental arguments were not addressed by the lower courts, in part due to the

2    procedure by which the underlying post-judgment motions were remanded to the Superior Court

3    and then transferred to the Court of Appeals for consideration as a personal restraint petition.

4    (See Dkt. No. 29, Exs. 13–14.) Respondent's brief in the Court of Appeals did not address

5    Petitioner's double jeopardy arguments. (See Dkt. No. 29, Ex. 16.) Before the Court of Appeals

6    ruled on the trial court post-judgment motions, Petitioner filed (apparently simultaneously on

7    January 6th/8th, 2010) a Reply Brief (Dkt. No. 29, Ex. 17) and a submission styled as a "Motion

8    on the Merits to Reverse" (Id., Ex. 18 at 2). Both briefs again raised the double jeopardy

9    argument. The Reply used the argument to attack the State's conclusion that the guilty plea

10   waived any constitutional violation, and cited Schoel and Linton. (Id., Ex. 17 at 5–6.) The

11   Motion cited Schoel and argued, "The State had no Legal Authority to Re-charge Petitioner with

12   First Degree Assault [ . . . . ]The State Held First Degree Assault charges over Petitioner's head

13   to secure the plea bargain, when they knew Second Degree Assault was all he could be charged

14   with." (Id., Ex. 18 at 2.) It further requested that the case be remanded for a new trial on the

15   second degree assault charge. (Id.)

16       The Court of Appeals stated that it would not consider any argument that the guilty plea

17   was coerced because it was raised for the first time in a reply brief rather than in the immediate

18   post-judgment motions that were converted into a personal restraint petition. (Dkt. No. 29, Ex.

19   19 at 4.) As Petitioner points out, the Court nonetheless concluded that the plea was not coerced

20   and implicitly dismissed the basis for this claim (the double jeopardy argument). (Id.)

21       Petitioner again raised double jeopardy arguments in his Motion for Discretionary

22   Review to the Washington State Supreme Court. (Dkt. No. 29, Ex. 20.) In the course of an

23   argument about arraignment, he argued, "The State had no legal authority to re-file fist [sic]

24

1   degree assault charges against the petitioner" (citing <u>State v. Ahluwalia</u>, 143 Wash.2d 527 (2001)

2   (another Washington case dealing with double jeopardy under the Fifth Amendment)). A

3   separate argument, inartfully titled "Can the Court dismiss the Petitioner's claims by stating he

4   failed to raise the issue when in his original motion it was clearly raise [sic]?", directly addressed

5   the double jeopardy argument, both separately and as the basis for an argument that the guilty

6   plea was coerced. Petitioner wrote, "The acting Chief Judge dismissed Petitioner's claim that the

7   Court re-charged him with first degree assault knowing that second degree was all he could be

8   charged with by stating he did not raise this argument in the motions transferred for

9   consideration." (Dkt. No. 29, Ex. 20 at 14.) He continued, "The State re-filed first degree assault

10  charges with no legal authority, and secured a plea, negations [sic] of that higher charge. [ . . . ]

11  The State had no legal power to negotiate with first degree assault. Even stand-by counsel Tomas

12  [sic] Fryer was under the impression that the Petitioner was facing first degree assault charges."

13  (<u>Id.</u>, Ex. 20 at 15.)

14       The Commissioner of the Washington Supreme Court agreed with Petitioner that he had

15  raised the plea coercion claim with the trial court. (Dkt. No. 29, Ex. 21 at 2.) The opinion

16  denying discretionary review nonetheless held that his "bald claim of coercion" was insufficient

17  to merit collateral review. (<u>Id.</u>)

18       This history reveals the Washington courts had ample "opportunity to correct alleged

19  violations of [the] prisoner['s] federal rights." <u>Arrendondo</u>, 763 F.3d at 1138. At every stage,

20  Petitioner set forth both the facts giving rise to a double jeopardy claim and the legal theory (via

21  case citations) that animated the claim. Although he cited state cases, they were Washington

22  Supreme Court cases applying the double jeopardy prohibition of the Fifth Amendment. <u>See</u>

23  <u>Schoel</u>, 54 Wn.2d at 397–98 (1959); <u>Ahluwalia</u>, 143 Wn.2d at 539–40 (2001); <u>Linton</u>, 156

24

1    Wn.2d at 782–84 (2006). Respondent does not grapple with these aspects of the record,

2    appearing to rely entirely on the fact that the phrase "double jeopardy" does not appear in

3    petitioner's filings. (See Dkt. No. 49 at 12–13.) But Respondent offers no case law to support its

4    interpretation of exhaustion doctrine, which would hold pro se litigants to a stringent standard for

5    the convenience of courts that neglect to check case citations. Petitioner has exhausted his double

6    jeopardy claim.

7        B.  Clearly Established Federal Law

8        Petitioner alleges he was prosecuted in violation of the Double Jeopardy Clause when he

9    was re-charged with first-degree assault, a crime of which Petitioner further alleges previously

10   been impliedly acquitted at trial. The principle that the implied acquittal prohibits subsequent

11   prosecution under the Double Jeopardy Clause was explained by the Supreme Court as long ago

12   as 1898. See Selvester v. United States, 170 U.S. 262, 269 (1898) ("Doubtless, where a jury,

13   although convicting as to some, are silent as to other, counts in an indictment, and are discharged

14   without the consent of the accused, as was the fact in the Dealy Case, the effect of such discharge

15   is 'equivalent to acquittal,' because, as the record affords no adequate legal cause for the

16   discharge of the jury, any further attempt to prosecute would amount to a second jeopardy, as to

17   the charge with reference to which the jury has been silent.").

18       This principle was reaffirmed in a context identical to Petitioner's in Green v. United

19   States, where the implied acquittal occurred as a result of being convicted of a lesser included

20   charge accompanied by jury silence on the greater charge. See Green v. United States, 355 U.S.

21   184, 190 (1957). To the extent that Respondent draws a distinction between merely being

22   charged impermissibly and proceeding to a full trial on the impermissible charge (see Dkt. No.

23   54), that distinction is not found in the case law. See, e.g., United States v. Dixon, 509 U.S. 688

24

1   (1993) (affirming a district court's grant of a motion to dismiss an indictment containing charges

2   which violated the Double Jeopardy Clause).

3        This Court requested additional briefing in part to determine whether Petitioner was

4   indeed acquitted of the first-degree assault charge when his jury did not reach a verdict.

5   Respondent conceded, "The trial minute records [ . . . ] do not indicate splits or divisions in not

6   reaching the verdict of the first degree assault. As <u>Brazzel [v. Washignton</u>, 491 F.3d 976 (9th

7   Cir. 2007)] and <u>Green [v. United States]</u> indicate, subsequent prosecution on the charge the jury

8   implicitly acquits is a double jeopardy violation." (Dkt. No. 49 at 13.) Respondent proceeded to

9   explain why this problem was cured or avoided by Petitioner's ultimate guilty plea on second

10   degree assault (<u>id.</u>)—an issue the Court will address further below.

11        Supreme Court cases available at the time of the state court's decisions on Petitioner's

12   personal restraint petition clearly establish that Petitioner was prosecuted in violation of the

13   Double Jeopardy Clause when he was charged on remand with first degree assault, a crime of

14   which he had previously been impliedly acquitted. Petitioner has thus fulfilled AEDPA's

15   prerequisite that that the adjudication of his double jeopardy-related arguments resulted in state

16   court "decision[s] that [were] contrary to, or involved an unreasonable application of, clearly

17   established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §

18   2254(d).

19       C.   Guilty Plea

20        Once the "contrary to" prong is met for a particular point of law, the Court analyzes the

21   constitutional question without the deference that AEDPA otherwise requires. <u>See</u> <u>Frantz</u>, 533

22   F.3d at 735. Respondent claims the fact that the State eventually charged Petitioner with second

23

24

1  degree assault and Petitioner entered a plea of guilty on that charge cures the double jeopardy

2  error. (See Dkt. No. 54 at 2.) It is true that a "voluntary and intelligent"

3       guilty plea represents a break in the chain of events which has preceded it in the criminal
        process. When a criminal defendant has solemnly admitted in open court that he is in fact
4       guilty of the offense with which he is charged, he may not thereafter raise independent
        claims relating to the deprivation of constitutional rights that occurred prior to the entry
5       of the guilty plea. He may only attack the voluntary and intelligent character of the guilty
        plea [ . . . . ]

6

7  Tollett v. Henderson, 411 U.S. 258, 267 (1973). Double jeopardy claims are treated like other

8  constitutional claims in that "when the judgment of conviction upon a guilty plea has become

9  final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to

10 whether the underlying plea was both counseled and voluntary." United States v. Broce, 488

11 U.S. 563, 569 (1989).

12      Petitioner was proceeding pro se with the assistance of standby counsel at the time of his

13 plea. (See Dkt. No. 29, Ex. 19 at 4.) Unfortunately, Petitioner's standby counsel, Mr. Fryer,

14 provided Petitioner with inaccurate information about the charge Petitioner could legally face

15 (due to the double jeopardy bar) if he chose to go to trial. Mr. Fryer provided Petitioner with an

16 affidavit that became part of the record before the state Court of Appeals in which he explained

17 that he had informed Petitioner of the standard range sentence that would be imposed for

18 conviction of first degree assault at trial (240–138 months) compared to second degree assault

19 (63–48 months), and stated, "While I can not [sic] speak to the defendant's thought process as to

20 accepting or rejecting plaintiff's offer to plead guilty to assault in the second degree. [sic]

21 Presumptively, the information I provided him as to the consequences of pleading guilty to

22 assault in the first degree factored into his decision to plead guilty to the amended charge." (Dkt.

23 No. 29, Ex. 17, Appx. K.) Had Mr. Fryer been acting as Petitioner's formal counsel at the time of

24 the plea, this "gross mischaracterization of the likely outcome presented in [the] case, combined

1   with the erroneous advice on the possible effects of going to trial, [would] fall[ ] below the level

2   of competence required of defense attorneys." Womack v. Del Papa, 497 F.3d 998, 1003 (9th

3   Cir. 2007).

4       "[A] defendant has the right to make a reasonably informed decision whether to accept a

5   plea offer." Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (alteration in original). The

6   standard for determining the plea's validity is "whether the plea represents a voluntary and

7   intelligent choice among the alternative courses of action open to the defendant." North Carolina

8   v. Alford, 400 U.S. 25, 31 (1970). Regardless of whether Petitioner can claim ineffective

9   assistance on the part of standby counsel, it is clear that due to the misinformation he received,

10  Petitioner did not understand the charges he was facing or the likely outcome of trial. See

11  Bradshaw v. Stumpf, 545 U.S. 175, 182 (2005) (stating a "guilty plea would indeed be invalid if

12  [the defendant] had not been aware of the nature of the charges against him"); c.f. Iowa v. Tovar,

13  541 U.S. 77, 92 (2004) (noting that an uncounseled defendant had "never claimed that he did not

14  fully understand the charge or the range of punishment for the crime prior to pleading guilty").

15      At the heart of the Due Process clause is a concern with the reliability of proceedings that

16  permit the government repeated attempts at conviction:

17      [A] need for reliability accords with one of the central concerns animating the
        constitutional prohibition against double jeopardy. As the Court explained in Green v.
18      United States, the Double Jeopardy Clause prevents States from "mak[ing] repeated
        attempts to convict an individual for an alleged offense, thereby subjecting him to
19      embarrassment, expense and ordeal and compelling him to live in a continuing state of
        anxiety and insecurity, as well as enhancing the possibility that even though innocent he
20      may be found guilty."

21  United States v. Monge, 524 U.S. 721, 732 (1998) (citation omitted). The filing of the first-

22  degree assault charge placed Petitioner at a grave disadvantage in the plea bargaining process

23  that undercut the reliability of the resulting plea.

24

ORDER ON MOTION FOR RECONSIDERATION-
22

1    Petitioner is thus entitled to habeas relief on the double jeopardy claim even though he

2    ultimately pleaded guilty to a permissible second degree assault charge.

3    V.    Certificate of Appealability

4    In the alternative, Petitioner seeks a certificate of appealability. (Dkt. No. 43 at 1, 3.)

5    Because the Court agrees with Petitioner on the two central grounds of his Motion for

6    Reconsideration and is granting the relief sought, the request for a certificate of appealability is

7    moot.

8    **Conclusion**

9    The Court GRANTS the Motion for Reconsideration, the Court's prior order and

10   judgment are VACATED, and the Court DECLINES to adopt the Report and Recommendation.

11   The Court GRANTS the Petition for Habeas Corpus on the grounds of waiver of the right to

12   counsel and double jeopardy and DENIES the request for a certificate of appealability as moot.

13   Petitioner's plea of guilty to second degree assault is vacated; Respondent shall release Petitioner

14   from state custody on the second degree assault sentence within 90 days of the date the judgment

15   herein becomes final, unless the State of Washington elects to prosecute Petitioner on second

16   degree assault within 90 days of the final judgment.

17

18   The clerk is ordered to provide copies of this order to all counsel.

19   Dated this 3rd day of December, 2014.

20

21

22                                              _____
                                               Marsha J. Pechman
23                                             Chief United States District Judge

24